UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MOLLETT,[*]<br><br>  Plaintiff,<br><br>  v.<br><br>LUMINANT POWER, LLC,<br><br>  Defendant. | No. 24 CV 4877<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiff John Mollett was employed by defendant Luminant Power for over eight years. For the bulk of that time, he served in a management-level position as an Electrical Supervisor. In August 2022, Luminant opened an investigation into derogatory remarks made by Mollett. That same month, Mollett became concerned that the company was failing to report required information to the EPA. In January 2023, his managers and an HR representative told him that he had been terminated. Mollett brings suit under the Illinois Whistleblower Act and Illinois common law alleging that he was wrongfully terminated and retaliated against for engaging in protected activity. For the reasons discussed below, Luminant's motion for summary judgment is granted.

---

[*] Plaintiff's complaint and brief spell his last name, "Mollett." Plaintiff's sworn deposition, email account, and email signature block spell his last name, "Mollet." I use the spelling from plaintiff's complaint, although it is possible that the latter is the correct spelling and plaintiff's counsel is mistaken.

I.   **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether summary judgment should be granted, I view all the facts and draw all reasonable inferences in favor of the non-moving party. *See Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1141 (7th Cir. 2023). The court gives the non-moving party "the benefit of reasonable inferences from evidence, but not speculative inferences in his favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The moving party must file a supporting memorandum of law and statement of facts demonstrating that it is entitled to judgment as a matter of law. *See Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a). The non-moving party may respond with its own statement of facts, and all material facts set forth in the moving party's statement that are not controverted by a statement of the opposing party will be deemed to be admitted. N.D. Ill. Local R. 56.1(b)(3).

Mollett did not provide a separate statement of additional facts and did not respond to Luminant's Local Rule 56.1 statement. Though his response brief includes

a "statement of facts" section contesting certain conclusions made by Luminant, he cites only his deposition and does not respond directly to Luminant's Rule 56.1 statement. [28] at 2; *see* N.D. Ill. Local R. 56.1(g) ("When addressing facts, the memorandum must cite directly to specific paragraphs in the LR 56.1 statements or responses.").[1] Because Mollett failed to comply with Local Rule 56.1, all statements made in Luminant's statement of material facts are undisputed and I disregard any additional facts offered by Mollett.[2]

## II. Facts

John Mollett began working at the Kincaid Power Plant as an electrician in August 2014. [27] ¶ 3. Within six months, he assumed a management-level position of electrical supervisor. [27] ¶ 3. In this role, between 18 and 21 electricians and technicians reported to him. [27] ¶ 4.

### A. Mollett's Environmental Concerns

Kincaid Power Plant is operated by Luminant, a competitive power generation business. [27] ¶¶ 1–2. Power plants in the United States are legally required to monitor the level of flue gas emissions produced as a by-product of the energy generation process. [27] ¶ 41. The EPA requires Kincaid to perform regular testing to ensure compliance with federal emissions standards. [27] ¶ 44. Mollett was the direct

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page and line numbers.

[2] Plaintiff's counsel, Chad Eisenback and Sulaiman Law Group, are frequent practitioners in this court. Absent explanation, their failure to comply with the local rules and their possible misspelling of their client's name suggest a failure to adhere to the minimal standards of professional competence.

supervisor of the technician responsible for this testing and it was his responsibility to ensure that the required testing was performed quarterly. [27] ¶¶ 46–47.

In August 2022, an electrician working under Mollett informed him that it appeared testing had not been completed in the previous quarter. [27] ¶ 49. Mollett concluded that testing had not been completed for over a year. [27] ¶ 51. Mollett reported his conclusion to the Plant's Environmental and Chemistry Manager, who is responsible for overseeing the quarterly testing. [27] ¶¶ 52–53. Mollett was then present in October 2022 when the final quarterly testing was performed. [27] ¶ 59.

In December 2022, Mollett discovered evidence suggesting that the October testing had not actually been performed. [27] ¶¶ 61–62. Mollett then told the Environmental and Chemistry Manager that the EPA needed to be notified. [27] ¶ 64. But when the Manager investigated Mollett's reports, he disagreed and concluded that the quarterly testing had correctly been performed. [27] ¶ 66.

Mollett also shared his concerns over the testing to his supervisor and the Plant Manager, but he did not tell them that he planned to report the issue to the EPA. [27] ¶¶ 67–68. The Environmental and Chemistry Manager likewise did not tell these two individuals about Mollett's EPA-related comment. [27] ¶ 69. Mollett says he reached out to the EPA to report the issue on January 11, 2023. [27] ¶ 71. Mollett did not tell anyone at Luminant that he had contacted the EPA that day. [27] ¶ 75.

B.  **Mollett's Racist Comments**

Luminant's parent company, Vistra, provides access to its Code of Conduct to all employees. [27] ¶¶ 7–8. Mollett was familiar with the Code of Conduct and was

4

responsible for helping to enforce it. [27] ¶¶ 9–11. Among other things, the Code states that inappropriate conduct or comments based on a protected status (such as race) subject an employee to severe disciplinary action, up to and including termination. [27] ¶ 12. The Code lists "slurs or negative stereotyping" as an example of prohibited conduct. [27] ¶ 13.

In August 2022—the same month when Mollett learned of the potential testing issues—a Luminant employee submitted a report to Human Resources stating that he overheard coworkers discussing the circumstances surrounding a fire at an African American colleague's home. [27] ¶ 16. Vistra's Employee Relations (ER) Manager opened an investigation and interviewed the relevant parties. [27] ¶¶ 18–21. One of the parties corroborated that Mollett and another individual had made racially insensitive comments. [27] ¶¶ 22–23.

When interviewed by the ER representatives, Mollett denied the accusation. [27] ¶ 25. The representatives told Mollett not to discuss the ongoing matter with anybody else. [27] ¶ 26. In a follow-up interview a few weeks later, Mollett conceded that he had discussed the matter with others. [27] ¶¶ 28–29. However, he continued to deny having made racially insensitive comments. [27] ¶ 33.

The ER representatives ultimately concluded that Mollett (1) made comments of a negative stereotyping nature; (2) provided untruthful statements during the interview process; and (3) violated the directive not to discuss the investigation with anyone. [27] ¶ 34. The ER representative reached a similar conclusion concerning the second individual under investigation. [27] ¶ 35.

5

On January 11, 2023—the same day that Mollett claims he approached the EPA—the ER representatives met with Mollett's supervisor and the Plant Manager to discuss their investigation and findings. [27] ¶ 36. The men agreed with the representatives' recommendation that both Mollett and the other individual be terminated. [27] ¶¶ 37–38. Mollett was terminated over the phone on January 18, 2023. [27] ¶ 39.

### C. Present Dispute

Luminant argues that Mollett was fired due to the findings of their investigation into his racially insensitive comments. [27] ¶ 40. Mollett argues that this justification is pretextual and that he was instead fired for threatening to report (and actually reporting) Luminant's noncompliance to the EPA. [28] at 8. Mollett filed suit against Luminant for violating the Illinois Whistleblower Act and under a comparable common-law theory. [1-1] ¶¶ 16–29. The case was removed to this court.[3] Luminant now moves for summary judgment.

## III. Analysis

### A. Preliminary Issues

Luminant points toward two alleged deficiencies in the complaint that it says warrant dismissal without reaching the merits. [26] at 14, 19. First, Luminant argues that Mollett erroneously cited Section 20.1 of the Illinois Whistleblower Act—a

---

[3] The court has subject-matter jurisdiction over this case because plaintiff is a citizen of Illinois, defendant is a limited liability company owned entirely by a corporation headquartered in Texas and organized under the laws of Delaware, and the amount in controversy exceeds $75,000. [1] ¶¶ 7–17; [4]; 28 U.S.C. § 1332(a)–(c). The parties agree that Illinois law applies. [26] at 14; [28] at 3.

section that is not an independent cause of action for damages. [26] at 14. But a plaintiff is not required to plead the correct statute (or any statute at all) to have a viable claim. *See Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). A complaint need only contain factual allegations that give a defendant "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Disregarding the cited section, Mollett's complaint makes clear the basis of his claims and the legal test that applies to them. [1-1] ¶¶ 16–28. Here, Luminant was on notice that Section 15(b) of the Illinois Whistleblower Act provided the framework for analysis and addressed it in their brief. [26] at 15–16.

Second, Luminant argues that Mollett's "wrongful discharge against public policy" claim must be dismissed because such a tort is not recognized under Illinois law. [26] at 19. Yet, as Luminant concedes, Illinois common law *does* recognize the comparable tort of retaliatory discharge. *Jackson v. Nw. Mem'l Hosp.*, 2020 WL 6801843, at *2 (N.D. Ill. Nov. 19, 2020). Thus, under the same logic as above, Mollett has sufficiently characterized the legal basis of his claim. [1-1] ¶¶ 22–28. I conclude that Mollett's claims need not be dismissed (and summary judgment need not be granted) on the basis of the pleadings.

### B. Merits of the Claims

Though Mollett brings claims under two theories (the Illinois Whistleblower Act and, as clarified above, common-law retaliatory discharge), their elements are similar. Section 15(b) of the Act requires the plaintiff to show (1) he suffered an

adverse employment action, (2) that was in retaliation, (3) for making a disclosure to a government or law enforcement agency, (4) of a suspected violation of an Illinois or federal law, rule, or regulation. *Schultz v. Ruan Transp. Corp.*, 735 F.Supp.3d 987, 992 (N.D. Ill. 2024). Retaliatory discharge requires the plaintiff to show that (1) he was discharged, (2) in retaliation for his activities, and (3) the discharge violated a clear mandate of public policy. *Turner v. Mem'l Med. Ctr.*, 233 Ill.2d 494, 500 (2009). Both theories require Mollett to produce some evidence of retaliation.

Illinois courts equate retaliation with causation: "The requirement that the discharge be in retaliation for an employee's activities requires that a plaintiff establish a causal relationship between the employee's activities and the discharge." *Brummel v. Grossman*, 121 N.E.3d 970, 986 (Ill. App. Ct. 2018). A whistleblower claim thus requires a plaintiff to show that he suffered an adverse employment action *because of* his protected activity. *See Schultz*, 735 F.Supp.3d at 993.

Further, "[t]o retaliate against a complainant, decisionmakers must be aware of the complaint." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835, 841 (7th Cir. 2018). And while temporal proximity may be a factor in establishing causation, "mere temporal proximity between the [protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

There is no dispute over either of these two propositions. First, Mollett has no evidence that the decisionmakers were aware of his threat to report Luminant to the

8

EPA. [27] ¶¶ 75–79. His own deposition supports Luminant's statement of material facts: Mollett testified that he never told anyone at Luminant (other than the Plant's Environmental and Chemistry Manager, who was not responsible for his termination) that he intended to (or actually did) report anything to the EPA or any other governmental agency. [27-3] at 179:8–20; [27] ¶ 80.[4] Rather than challenge Luminant's version of the facts, Mollett instead challenges defendant's interpretation of the law and claims that the "IWA does not require that the employee's report to the government agency be known to the employer." [28] at 9. This statement is without citation to legal authority for a reason: it's wrong as a matter of law. *See, e.g.*, *Hamer*, 897 F.3d at 841; *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 915–16 (7th Cir. 2022) (finding a plaintiff failed to meet his burden on causation for the "simple reason" that "none of the relevant supervisors knew that [he] had engaged in protected activity").

Second, Mollett has not offered any evidence beyond temporal proximity to support an inference of retaliatory motive. The two-week timeline at issue is meaningfully different from the one-day timeline from *Xiong v. Board of Regents of University of Wisconsin System*. 62 F.4th 350, 355 (7th Cir. 2023). "For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [courts]

---

[4] Mollett's response brief stretches the deposition testimony beyond a reasonable inference. Mollett claims that he "expressly informed Defendant that if the fraudulent reporting was not corrected and disclosed, he would report the violations to the EPA himself." [28] at 8 (citing [27-3] at 178). But the Environmental and Chemistry Manager was not the decisionmaker in this case and he did not report Mollett's EPA comment to anyone else at the Plant. [27] ¶ 69. Although making a report to a manager might suffice as notice to the entity, without notice to the decisionmaker there is no reasonable inference that Mollett's report informed the termination decision.

typically allow no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

Mollett's second cited case is no more persuasive. Unlike *Lang v. Illinois Department of Children & Family Services*, 361 F.3d 416 (7th Cir. 2004), where the defendant-employer had never criticized the employee's performance during the five previous years of his employment, Mollett had received disciplinary action in the years leading up to the present controversy. [27] ¶ 11. More importantly, the plaintiff in *Lang* was not the subject of an internal investigation concerning behavior that had violated the company's code of conduct. [27] ¶ 18. As explained in *Perez v. Staples Contract & Commercial LLC*, temporal proximity alone does not support an inference of retaliation where the employee's termination "was immediately preceded by an intervening event unrelated to [his] complaints." 31 F.4th 560, 575 (7th Cir. 2022) (quoting *Reid v. Neighborhood Assistance Corp. of Am.*, 749 F.3d 581, 589 (7th Cir. 2022)).

The decisionmakers' lack of knowledge, standing alone, would warrant summary judgment. As would the lack of evidence beyond temporal proximity. Taken together, there is no genuine dispute of material fact in this case and Mollett cannot prevail on either of his claims.

## IV. Conclusion

Defendant's motion for summary judgment, [25], is granted. Enter judgment in favor of defendant and terminate civil case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: November 6, 2025